Peter Murray, Alias Julius Murray v. Commissioner.
Murray v. Commissioner
Docket No. 6085.
United States Tax Court
1945 Tax Ct. Memo LEXIS 17; 4 T.C.M. (CCH) 1092; T.C.M. (RIA) 45369; December 12, 1945
*17 Held, on the facts, that petitioner realized no taxable income in 1942 or 1943, and that penalties for failure to file income tax returns and for alleged fraud may not be imposed. I. C. Farthing, Esq., for the petitioner. Edward L. Potter, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: This proceeding involves income taxes and penalties for the years and in the amounts as follows: 10%
25%
50%
Year
Deficiency
Penalty
Penalty
Penalty
1942
$507.26
$126.82
$253.63
1943
578.21
$57.82
289.11
*18 [The Facts] Petitioner, a 75 year old negro, is a resident of Burton, South Carolina, where he operates a small farm. He cannot read but can write his name. He did not file income tax returns for 1942 or 1943. Early in 1944, petitioner was arrested by agents of the Federal Bureau of Investigation and shortly thereafter a grand jury returned a true bill against him for violation of Section 311, Title 50, Appendix, U.S.C. (interfering with the Selective Service Act). Petitioner pleaded guilty to the indictment and was sentenced to one year imprisonment and fined $1,000. The sentence provided that upon payment of the fine, the prison term would be suspended and he should be placed on probation for three years. Petitioner paid the fine. The indictment specifically charged petitioner with furnishing whiskey and sugar of lead to certain Selective Service registrants with a view to making them ill and to deceive the military authorities who were to examine the registrants as to their fitness for military service. At the time of the arrest, agents of the Federal Bureau of Investigation located approximately $7,208 locked in a trunk in petitioner's farm house. The Commissioner determined *19 that the petitioner had cash on hand on December 31, 1943, in the amount of $7,208 which was not on hand on January 1, 1942, and that in the absence of an accurate record of income for 1942 and 1943, one-half of the above amount represented income for each of those years. In addition, the Commissioner held that the petitioner had spent $1,000 for personal and living expenses each year and that such amounts represented additional income, making a total income of $4,604 for each of the years in question. Twenty-five per cent of the tax for 1942 and 10 per cent of the tax for 1943 was added thereto under Section 291(a) of the Internal Revenue Code for failure to file returns within the time prescribed by law. Fifty per cent of the tax was added under Section 293(b), Internal Revenue Code, for fraud with intent to evade taxes. At the hearing the evidence introduced was to the effect that petitioner's only income in 1942 and 1943 was from his farming operations and that such income did not exceed $600 in 1942, and $290 in 1943, and that in neither of the years in question did petitioner earn taxable income which would require the filing of *20 returns. Petitioner was married and was living with and supporting his wife and two minor dependents for whom the respondent made appropriate allowance in each of the taxable years. The petitioner testified that he had lost approximately $1,500 by reason of a bank failure in 1925 or 1926, and that since that time he had not been willing to entrust money to any such institution but had maintained the trunk in his home for the purpose of safekeeping his accumulations and other monies entrusted to his care. Further evidence was to the effect that petitioner had accumulated about $6,000 some years earlier while he was employed, principally in New York State, and that a large portion of that sum was in the money found in the trunk. Some of the trunk money represented proceeds from small life insurance policies petitioner had taken out on his mother, a brother and a sister, all of whom had died within recent years. Three of petitioner's wife's grandsons were in the armed services and their mother being dead, petitioner's wife, who reared them, received allotments from and on behalf of each of them. Most of the allotment money was placed in the trunk for their use upon their release from *21 the service. The grandsons had been in the service for three or four years at the time of the hearing. One of petitioner's nieces and one of his brothers had entrusted sums totalling $1,350 to petitioner for safekeeping. This money, comprising a trust, was part of that kept in the trunk. Petitioner pleaded guilty to an indictment charging him with unlawfully, knowingly and willfully counseling, aiding and abetting at least three persons to evade service in the land and naval forces of the United States. At the hearing before us petitioner testified that he had pleaded guilty "to the sugar of lead" which he used to cure the itch, but testified that he had never received any compensation for distributing whiskey and sugar of lead, and that he had no income during the taxable years other than that resulting from s farming operations. The respondent would have us find, from inference alone, that petitioner received income from some or all of the three persons designated by name in the indictment or from others, unknown, in return for the mixture of sugar of lead with whiskey which he was indicted and fined for furnishing. Respondent called no witnesses, nor did he furnish any evidence *22 whatsoever which would furnish a basis for the conclusion urged upon us. At the hearing petitioner denied having sold the mixture or even furnishing it to anyone. He stated that if such had been the case he would have used the mixture to keep his own grandchildren out of the service. Though the petitioner may have been guilty of the crime for which he was sentenced and fined, we do not think that a presumption that he received all or any of the money in question from the sale or distribution of whiskey and sugar of lead can stand in the face of the evidence adduced at the trial. The indictment does not charge the petitioner with having sold the medicine. We find no statement that he did sell it and we have his unchallenged testimony that he realized no compensation whatsoever other than the small sums from the sale of his farm products and minor gains from the sale of some livestock, the total of which was less than $600 in 1942, and $290 in 1943. Upon the state of the record, we can only conclude that the respondent erred in his determination and that there is no deficiency in petitioner's income tax liability for the years in question since the amounts realized by him result in *23 no tax. Nor was the petitioner required to file income tax returns in view of the amounts of his income. Hence, the 25 per cent penalty assessed for 1942 and the 10 per cent penalty for 1943 are not in order. The respondent's only evidence was to the effect that petitioner had not filed returns. There is no evidence of fraud, thus such penalties may not be imposed. Decision will be entered for the petitioner.